**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Nathan J. PITNER, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 2007.
Filed July 12, 2007.

Thomas J. Wagner and Thomas H. Ramsay, West Chester, for appellant.

Jill Anderson, Asst. Dist. Atty., West Chester, for Com., appellee.

BEFORE: HUDOCK, LALLY-GREEN AND COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This case is a direct appeal from judgment of sentence. The charges arose from three drug sales in which Appellant was involved. The issues are: (1) whether there was sufficient evidence to sustain Appellant's convictions for possession of marijuana and possession of drug paraphernalia with respect to the first drug sale; (2) whether the trial court erred by admitting prior statements of a Commonwealth witness as substantive evidence; (3) whether the court erred in denying Appellant's motion to suppress certain evidence; (4) whether Appellant's various sentences for possession of drug paraphernalia should have merged with sentences he received for possession of a controlled substance or delivery of a controlled substance; and (5) whether the court imposed a sentence exceeding the statutory maximum for drug possession. We affirm.

### Facts

¶ 2 *First Sale.* A confidential informant ("CI") who was working with a police drug task force asked Derek Huskins ("Huskins") to sell marijuana to a certain buyer. Unknown to Huskins, the buyer was an undercover police officer ("Officer").

¶ 3 Appellant drove Huskins in a van to a certain apartment complex to conduct the sale. At some point, CI was also in the vehicle. Huskins and CI entered the complex; Appellant waited in his vehicle. Inside the complex, Huskins sold Officer marijuana that was contained in a bag.

The two men discussed possible future drug sales. Huskins then returned to Appellant's vehicle, and the vehicle left the scene.

¶ 4 *Second Sale.* Huskins and Officer subsequently talked by phone and arranged another drug deal. Pursuant to their discussion, they met at a certain location. Huskins indicated that he needed to call his "guy." N.T., 2/02/06, Vol. 2, at 11. After doing so, Officer gave Huskins money for the drug purchase and the two of them drove to a second location so that Huskins could obtain the marijuana.

¶ 5 While Officer waited, Huskins entered a nearby restaurant. Appellant was present therein, he and Huskins having made plans to meet. Police observed the two of them ride in Appellant's red Ford Bronco to yet another location and then return to the restaurant. After they separated, Huskins returned to Officer and gave him marijuana.

¶ 6 *Third Sale.* On a third date, Huskins and Officer again met, having arranged for another sale of marijuana. Officer paid Huskins an amount of money. Huskins indicated that he had to contact his "guy." *Id.* at 214. Using Officer's cell phone, Huskins called Appellant and drove to meet him at a nearby YMCA. Appellant arrived at the YMCA in his red Ford Bronco. Huskins entered Appellant's Bronco which then exited the lot, only to return a short time later. Huskins then exited the Bronco, carrying a container. He returned to his own vehicle and left the YMCA.

¶ 7 Appellant, too, drove from the YMCA. At that time, police stopped and arrested him. Searching Appellant, officers found a portion of the marked curren-

---

* Retired Senior Judge assigned to the Superior Court.

cy Officer had paid to Huskins. Huskins returned to Officer and delivered the marijuana. He was thereafter arrested.

¶ 8 Appellant and Huskins were charged with various drug offenses arising from the aforesaid three sales. Huskins pled guilty. In the course of doing so, he signed a written plea colloquy admitting to certain facts, among which was the fact that he received the subject marijuana from Appellant for the purpose of delivering it in each of the three transactions.

¶ 9 Also, during Huskins' guilty plea hearing, the Commonwealth recited certain facts on the record. The facts indicated, *inter alia,* that Appellant supplied Huskins with the marijuana in each of the sales and, in the first sale, that Appellant drove Huskins to the complex so that the sale could be effectuated. Under oath, Huskins agreed with the Commonwealth's recitation.

¶ 10 At Appellant's jury trial, Huskins testified for the Commonwealth. However, his testimony conflicted with the facts to which he agreed in his plea colloquy and during his plea proceedings. More specifically, at Appellant's jury trial, Huskins indicated that, although Appellant drove Huskins to the location of the first drug sale, the two men had not discussed the sale and Appellant was not involved in the crime. Huskins also admitted to calling and/or meeting Appellant at various locations during the course of the second and third sales, but Huskins denied that Appellant supplied the drugs.

¶ 11 The Commonwealth then questioned Huskins about the inconsistencies between his trial testimony and his prior statements. Eventually, on the Commonwealth's motion, the court admitted into evidence Huskins' written colloquy and the transcript of his plea hearing.

¶ 12 A jury convicted Appellant of, *inter alia,* possession of a controlled substance, possession of drug paraphernalia and delivery of a controlled substance ("delivery"). He later appealed.

## I. Sufficiency

 ¶ 13 Appellant challenges the sufficiency of the evidence with respect to his convictions for possessing marijuana and drug paraphernalia in the first sale. This Court's standard for reviewing a sufficiency claim is whether, viewing all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth, the factfinder reasonably could have determined all the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Hardy,* 918 A.2d 766, 774 (Pa.Super.2007). This Court considers the evidence actually introduced, without regard to an appellant's claims that some of the evidence was wrongly admitted. *See Commonwealth v. Conklin,* 587 Pa. 140, 897 A.2d 1168, 1175 n. 12 (2006). Additionally, we do not weigh the evidence. *Hardy,* 918 A.2d at 774. Any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence. *Id.*

¶ 14 The Controlled Substance, Drug, Device and Cosmetic Act ("the Act") prohibits the knowing or intentional possession of a controlled substance by a person not authorized under the law to do so. 35 P.S. § 780–113(a)(16). Marijuana is a controlled substance. 35 P.S. § 780–104(1)(iv).

 ¶ 15 At 35 P.S. § 780–113(a)(32), the Act makes it illegal to possess with intent to use drug paraphernalia. Drug paraphernalia includes bags used to package or store marijuana. *Commonwealth v.*

*Torres,* 421 Pa.Super. 233, 617 A.2d 812, 815, 816 (1992).

¶ 16 A person who intends to facilitate the commission of a criminal offense and who, with such intent, aids a second person in the commission of that offense is an accomplice thereto. 18 Pa.C.S.A. § 306(c)(1)(ii). Such an accomplice is criminally accountable for the offense. *Id.* at (a), (b).

██ ¶ 17 Viewed most favorably to the Commonwealth, the evidence discussed *supra* is sufficient to support Appellant's convictions for possession of marijuana and drug paraphernalia with regard to the first drug sale. Under Pa.R.E. 803.1(1), Huskins' prior inconsistent statements were substantive evidence that Appellant possessed marijuana which he then gave to Huskins for sale by Huskins to Officer at the apartment complex.[1]

¶ 18 Appellant is certainly liable as a principal for possessing the marijuana that he gave to Huskins. Additionally, Appellant's actions made him Huskins' accomplice. Thus, Appellant is liable not just for his own criminal act of possessing the controlled substance but also for Huskins' criminal conduct of possessing the marijuana and the bag (drug paraphernalia) in which Huskins delivered the marijuana to Officer.

¶ 19 Any doubts that Appellant supplied Huskins with the marijuana and that he did so to aid in the sale were resolved by the jury against Appellant. We will not assess the weight or credibility of the testimony concerning these issues. As such,

we will not disturb the verdict. Appellant's insufficiency claim fails.

## II. Prior Inconsistent Statements

██ ¶ 20 Appellant contends it was improper for the trial court to admit as substantive evidence Huskins' prior statements (*i.e.,* his signed guilty plea colloquy and the statements he made during his plea proceedings.)

¶ 21 If a statement was made at a legal proceeding under oath subject to the penalty of perjury or was put in a writing that was signed and adopted by the declarant, and if that statement is inconsistent with testimony given by the declarant, then the statement may be admitted as substantive evidence at trial, assuming the declarant is subject to cross-examination regarding the statement. Pa.R.E. 803.1(1). The statement is not excluded by the hearsay rules. *Id.*

¶ 22 As we discussed *supra,* the facts to which Huskins agreed in his written plea colloquy and during his guilty plea proceedings were inconsistent with his trial testimony. Huskins signed and adopted the colloquy and was under oath subject to the penalty of perjury during his plea hearing. At Appellant's trial, he was subject to cross-examination regarding his prior inconsistencies. Accordingly, the colloquy and Huskins' statements during his plea were properly admitted as substantive evidence at Appellant's trial. Thus, there is no merit to Appellant's claim.

## III. Suppression

██ ¶ 23 Appellant claims the police lacked probable cause to stop and arrest

---

1. Appellant makes some argument that the prior inconsistent statements were admitted only for impeachment purposes and not as substantive evidence. The transcript does not contain any limiting instruction from the judge curtailing the jury's use of this evidence. Thus, we find that the statements were indeed substantive proof, and Appellant's argument on this point fails. In the alternative, he argues the admission of the statements as substantive proof was error. Such an argument is irrelevant to the sufficiency question.

him following the third sale. He concludes the suppression court erred in failing to suppress money seized from him incident to his arrest.

¶ 24 The officer supervising the drug investigation ("Supervising Officer") gave the order for other officers to stop the Bronco and arrest the driver as the vehicle left the YMCA. Supervising Officer had conducted visual and/or audio surveillance on portions of the three drug sales and had also received information from other task force officers who took part in the overall operation. He also spoke with CI.

¶ 25 Based on Supervising Officer's own observations and/or the knowledge he obtained from other officers and/or CI, he was thus aware of numerous facts prior to ordering Appellant's arrest. Those facts included the following. Before the first sale, Huskins told CI that he (Huskins) would be arriving for the drug transaction with Nate Pitner and that Nate Pitner would be the driver. CI advised police that Nate was indeed the driver that took Huskins to the apartment complex for the first sale.

¶ 26 During the second sale, after Huskins told Officer that he (Huskins) was going to meet his supplier, and after Huskins went to the red Bronco to do so, one of the officers conducting surveillance recognized the driver of the Bronco as being Appellant, Nathan Pitner. Appellant had arrived alone in the vehicle. Huskins did not have marijuana in his possession before entering the Bronco; he delivered marijuana to Officer after exiting the Bronco.

¶ 27 At some point before the third sale, police learned that the Bronco used in the second sale was registered in Appellant's name. Also, having identified the registration address, an officer went to that address and saw the vehicle in the driveway.

¶ 28 Additionally, between the second and third sales, police again observed Appellant driving the Bronco. Police made this observation in connection with an investigation unrelated to this case.

¶ 29 During the third sale, Officer was wearing audio equipment and, as a result, the officer supervising the drug investigation ("Supervising Officer") overhead the conversation between Huskins and Officer. In the course of that conversation, Officer and Huskins discussed a price for the drug sale. Huskins indicated he had to call his supplier and he placed a call using Officer's cell phone. He also indicated he had to go to the YMCA to meet his supplier. In addition to hearing this conversation, Supervising Officer also watched as Huskins drove in the direction of the YMCA.

¶ 30 Through contemporaneous radio communications with other officers participating in the operation, Supervising Officer learned that a red Bronco arrived at the YMCA, that Huskins entered the Bronco, and that he exited the vehicle carrying a container. Huskins re-entered his vehicle and drove back towards the location where Officer was waiting for him. After the Bronco left the YMCA, Supervising Officer ordered other officers to stop the vehicle and arrest the driver for drug distribution. This arrest took place before Huskins was arrested.

¶ 31 Probable cause for a warrantless arrest exists if the totality of the circumstances known to the officer is sufficient to justify a person of reasonable caution in believing the suspect has committed a crime. *Commonwealth v. Burnside*, 425 Pa.Super. 425, 625 A.2d 678, 681 (1993). Probable cause does not require a certainty that a crime has occurred. *Id.* Rather, it exists where criminality is a reasonable inference based on the factual and practical considerations of reasonable and prudent persons. *Id.*

¶ 32 Based on the evidence of Appellant's presence and participation with respect to the first and second sales, his ownership and prior use of the Bronco, Huskins' indication during the third incident that he was going to meet his supplier at the YMCA, the presence of the Bronco at the YMCA, Huskins' entry into the Bronco, and his departure therefrom carrying a container, it was reasonable for Supervising Officer to conclude that Appellant was the driver of the Bronco and that he had supplied Huskins with marijuana when Huskins entered the vehicle.

¶ 33 Moreover, we note in particular that the fact patterns of the second and third incidents (i.e., Huskins meeting with Officer, leaving to meet with supplier, entering and then exiting the red Bronco) were strikingly similar. Put another way, the third incident proceeded very much like the second, and Supervising Officer was justified in concluding that Appellant supplied Huskins with marijuana in the Bronco. Considering the totality of what Supervising Officer knew, he had probable cause to order the stop and arrest. Appellant's claim has no merit.

### IV. Merger

¶ 34 In his next issue, Appellant contends his various sentences for possession of drug paraphernalia are illegal in that they should have merged with his sentences for possession of marijuana and/or delivery thereof.

¶ 35 Crimes do not merge unless they arise from a single criminal act and all the statutory elements of one offense are included in the elements of the other. *Commonwealth v. Williams*, 920 A.2d 887, 889 (Pa.Super.2007); 42 Pa. C.S.A. § 9765. The crime of possessing a controlled substance does not involve, as a statutory element, the possession of paraphernalia. *See* 35 P.S. § 780–113(a)(16). Similarly, possessing paraphernalia does not have as a material element, the possession of a controlled substance. *See* 35 P.S. § 780–113(a)(32). Lastly, the crime of delivering a controlled substance requires, quite obviously, the delivery thereof to another person. 35 P.S. § 780–113(a)(30). The offenses of possessing a controlled substance and possessing paraphernalia do not require delivery. Thus, the statutory elements of each of these offenses are not contained in the others. The sentences do not merge. Appellant's claim fails.

### V. Maximum Sentence

¶ 36 In his last issue, Appellant argues his sentence for possession of marijuana during the first incident exceeded the statutory maximum. Normally, the incarceration for marijuana possession cannot exceed one year. 35 P.S. § 780–113(b). However, if the possession occurs after a prior conviction under the Act, the maximum term of imprisonment is three years. *Id.*[2]

2. The statute provides: Any person who violates any of the provisions of clauses (1) through (11), (13) and (15) through (20) or (37) of subsection (a) shall be guilty of a misdemeanor, and except for clauses (4), (6), (7), (8), (9) and (19) shall, on conviction thereof, be sentenced to imprisonment not exceeding one year or to pay a fine not exceeding five thousand dollars ($5,000), or both, and for clauses (4), (6), (7), (8), (9) and (19) shall, on conviction thereof, be sentenced to imprisonment not exceeding three years or to pay a fine not exceeding five thousand dollars ($5,000), or both; but, if the violation is committed after a prior conviction of such person for a violation of this act under this section has become final, such person shall be sentenced to imprisonment not exceeding three years or to pay a fine not exceeding twenty-five thousand dollars ($25,000), or both. 35 P.S. § 780–113(b).

¶ 37 Appellant had prior drug convictions, making him subject to the increased penalty. The court imposed incarceration of not less than twelve nor more than twenty-four months for Appellant's possession conviction. Thus, his penalty was within the statute.

¶ 38 He complains, however, that the sentencing statute is ambiguous as to which violations result in the enhanced maximum. Appellant argues the statute should be read such that the enhanced penalty only applies to defendants who violate clauses (4), (6)-(9) and/or (19) of § 780-113(a), while he violated clause (16).

¶ 39 We find nothing ambiguous about subsection (b) and we reject Appellant's interpretation thereof. His claim has no merit.

¶ 40 Based on the foregoing discussion, we affirm Appellant's judgment of sentence.

¶ 41 Judgment of sentence affirmed.