J-S68019-19
J-S68020-19
J-S68021-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHERY LEONARD | : | |
| | : | |
| Appellant | : | No. 552 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 14, 2018
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001006-2018

* * * * *

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHERY LEONARD | : | |
| | : | |
| Appellant | : | No. 553 WDA 2019 |

Appeal from the Judgment of Sentence Entered March 14, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001007-2018

* * * * *

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ZACHERY TARAN LEONARD | : | |
| | : | |

J-S68019-19
J-S68020-19
J-S68021-19

Appellant      :    No. 554 WDA 2019

Appeal from the Judgment of Sentence Entered March 14, 2019
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0001008-2018

BEFORE: GANTMAN, P.J.E., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:           FILED FEBRUARY 10, 2020

Zachery Leonard appeals from the judgments of sentence,[1] entered in the Court of Common Pleas of Fayette County, after a jury convicted him of various offenses in three consolidated cases.[2] After careful review, we affirm.

On March 18, 2018, Daniel Kessler drove to his niece's house in Connellsville, Pennsylvania, to park his white 1997 Geo Prizm overnight while he went camping with Leonard and Leonard's brother, Davin. Kessler went inside the home to speak with his niece, leaving Leonard outside. After speaking with his niece, Kessler discovered that his car and Leonard were gone. Shortly thereafter, Leonard returned with Kessler's car and ran away.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that by filing three separate notices of appeal from each docket below, Leonard has complied with the dictates of Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018), which held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases." Id. at 977. See also Pa.R.A.P. 341(a).

[2] We have sua sponte consolidated the three cases below for purposes of appeal. See Pa.R.A.P. 513 ("[W]here the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

Kessler locked the car and started to walk to a nearby APlus convenience store to purchase snacks for the camping trip. Leonard rejoined Kessler on the way and Kessler asked Leonard why Leonard took his car. Leonard said, "He just needed to go somewhere real quick that it was no big deal he brought it right back." See N.T. Jury Trial, 3/4/19, Vol. I at 18-19.

The three men spent the rest of the day camping and eventually went to sleep in a tent. The next morning, Kessler briefly woke up when Davin left early for work. Later that morning, Kessler awoke again and discovered that his car keys were missing and that Leonard was gone. Kessler then went to the police station and reported his car stolen to Officer Brian Harvey of the City of Connellsville Police Department.

On the same morning, Leonard arrived at a home occupied by brothers Charles and Robert Travis, their mother, their sister, Johnathan Nesbit, Robert's minor son, and Nesbit's minor son. Charles Travis gave Leonard permission to sleep in the living room for the day, but forbade him from leaving the living room. After some members of the household left the house, Leonard left the home. When the children returned home from school, they reported that various items were missing from their bedrooms, including an Xbox One console, multiple video games, controllers, knives, two BB guns, an iPod, a laptop, a laptop charger, a gift card, a vaporizer, and a book bag. After Charles Travis found out about the missing items, he texted Leonard to inquire about them.

That afternoon, David Lynn was driving down a one-way alley in front of the Community Center in Connellsville, when a 1997 white Geo Prizm struck Lynn's vehicle head-on. After the collision, the driver of the Geo Prizm, later identified as Leonard, drove away from the scene. Lynn followed the vehicle and found the Geo Prizm abandoned on Fairview Avenue. Later that day, Lynn contacted the police about the incident. Corporal Andrew Hominsky went to Fairview Avenue to recover the damaged vehicle. Corporal Hominsky discovered that the damaged vehicle was the same vehicle that Kessler had reported stolen earlier that day to Officer Harvey. The damage to the vehicle was consistent with the details of the collision that Lynn had described.

That evening, an employee of the Carnegie Free Library in Connellsville reported the presence of a suspicious person. Office Harvey and Lieutenant Tom Patton responded to the call and found Leonard asleep in the library's computer room with a variety of items surrounding him, including an Xbox One console, BB guns, and a book bag containing knives, controllers, and clothing. Officer Harvey took Leonard to the police station for questioning about the stolen vehicle. After Leonard waived his Miranda[3] rights, Leonard gave the officers access to text messages on his cell phone between himself and Kessler. The text messages showed that Leonard asked Kessler not to

_____

[3] Miranda v. Arizona, 84 U.S. 436 (1966).

press charges against him and that he would return the car with an additional $200.00 dollars.

While processing Leonard's belongings, Leonard's phone received a text message from an unknown number saying, "I believe that you are the one that took the last game system from our house." See N.T. Jury Trial, 3/4/19, Vol. I at 81. Lieutenant Patton used Facebook to identify the number as one belonging to Charles Travis. Lieutenant Patton told Charles Travis that Leonard was at the station with a variety of items and asked him to come in to identify them. Robert Travis, Johnathan Nesbit, their sons, and Charles Travis came to the station. Without prior knowledge of what items were recovered, the boys correctly identified the game system as an Xbox One with unique stickers, the appearance of the BB guns, and the other items recovered from Leonard.

Leonard was charged in three separate cases: No. 1006 of 2018 (accidents involving damage to attended vehicle or property[4] and driving without a license[5]); No. 1007 of 2018 (theft by unlawful taking[6] and receiving

_____

[4] 75 Pa. C.S.A. § 3743.

[5] 75 Pa. C.S.A. § 1501(a).

[6] 18 Pa. C.S.A. § 3921(a).

stolen property (RSP)[7]); and No. 1008 of 2018 (three counts each of theft by unlawful taking and RSP, two counts of access device fraud,[8] and one count of driving without a license).

On May 23, 2018, the Commonwealth filed a notice of intent to consolidate the three cases pursuant to Pa.R.Crim.P. 582. Leonard waived his arraignment on June 15, 2018, and proceeded to a jury trial. On March 5, 2019, a jury found Leonard guilty of the above-cited crimes.[9] On March 14, 2019, the court sentenced Leonard to 22 to 48 months of incarceration. Leonard timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Leonard presents the following issues for our review:

(1) Did the trial court err in consolidating the three (3) cases and, thereafter, holding a trial thereon?

(2) Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that [Leonard] exercised unlawful control over an [Xbox] One, video games, two BB guns, knives, and iPod, a laptop, a laptop charger, a gift card, a [vaporizer], and a book bag?

(3) Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that [Leonard] unlawfully took a 1997 Geo [Prizm] from its owner?

_____

[7] 18 Pa. C.S.A § 3925.

[8] 18 Pa. C.S.A. § 4106(a)(1)(ii).

[9] At No. 1008 of 2018, Leonard was acquitted of two counts each of theft by unlawful taking and RSP.

Appellant's Brief, at 7.

In his first issue, Leonard contends that the trial court improperly consolidated his three cases for trial. Specifically, he argues that consolidation "highly prejudiced [him] to the point where he could not receive a fair trial [and where] the jury could have improperly inferred guilt based upon the trial court's decision to try all three cases at one time." Appellant's Brief, at 10.

On May 23, 2018, the Commonwealth filed a notice of its intent to consolidate Leonard's three cases in writing with the clerk of courts, and served it on Leonard's attorney in compliance with Pa.R.Crim.P. 582. Leonard failed to respond, object to or file a motion to sever the cases prior to trial. Thus, we find the issue waived. See Commonwealth v. Berryman, 649 A.2d 961, 973 (Pa. Super. 1994) ("[W]e note that issues, even those of constitutional dimension[,] are waived if not raised in the trial court.") (citations omitted); see also Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[10]

In his second issue, Leonard contends that the Commonwealth failed to present sufficient evidence to sustain his conviction for theft by unlawful taking of an Xbox One console, multiple video games, two BB guns, knives, an iPod, a laptop, a laptop charger, a gift card, a vaporizer, and a book bag.

_____

[10] Even if we did not find the issue waived, we would conclude that it is meritless. Here, the cases were properly consolidated where the offenses were based upon the same transaction. See Pa.R.Crim.P. 582(A)(1)(b).

Specifically, Leonard argues that the Commonwealth failed to show that he exercised unlawful control over those items because Robert Travis sold those items to him.

Our standard for reviewing a sufficiency claim is whether "the factfinder reasonably could have determined all the elements of the crime were established beyond a reasonable doubt." Commonwealth v. Pitner, 928 A.2d 1104, 1108 (Pa. Super. 2007) (citations omitted). Unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence, the factfinder determines the weight of the evidence at trial. Id. Accordingly, this Court must view all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. Id.

An individual is guilty of theft by unlawful taking when "he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). "Movable property" is defined as "property of which location can be changed." 18 Pa.C.S.A. § 3901. Finally, "deprivation" occurs if a person "withhold[s] property of another permanently" or "dispose[s] of the property so as to make it unlikely that the owner will recover it." Id.

In Commonwealth v. Lloyd, 509 A.2d 868, 871 (Pa. Super. 1984), our Court concluded that sufficient evidence existed to sustain a defendant's conviction for theft by unlawful taking where the defendant was found in possession of the stolen item. Additional evidence such as the unique features

of the moveable property and the short period of time between the theft and the defendant being apprehended further supported the conviction. Id.

Similarly, here, Nesbit testified that Leonard was left alone in the house on the day the items were stolen. See N.T. Jury Trial, 3/4/19, Vol. I at 66. When the children returned home that day, they reported the missing items. Id. at 67. Officer Harvey and Lieutenant Patton testified that they found Leonard in the Carnegie Library computer room surrounded by the stolen items later that same day. Id. at 80; N.T. Jury Trial, 3/5/19, Vol. II at 22. Without being given any information about the items, the children were able to describe unique features of the items found with Leonard that only individuals familiar with the items would know. See N.T. Jury Trial, 3/4/19, Vol. I at 81-82.

Nothing in the record suggests these items were sold to Leonard or that Leonard had permission to take these items.[11] In fact, Charles Travis, Robert Travis, and Johnathan Nesbit all testified that they did not give Leonard permission to take these items or to go in the bedrooms. See id. at 54-55, 57, 69.

Similar to the situation in Lloyd, the police found Leonard in possession of the stolen items the same day the items were stolen and the owners of

_____

[11] In his appellate brief, Leonard claims that he testified the owners sold him the items. Appellant's Brief, at 9. However, Leonard never took the stand at trial.

items were able to identify their property by their unique characteristics. See N.T. Jury Trial, 3/4/19, Vol. I at 80-82. Furthermore, there is more evidence of the unlawful taking in the present case than in Lloyd because Leonard had a clear opportunity to steal the items when he was left inside the home unsupervised. See Id. at 66. By contrast, in Lloyd, the defendant took the property from a barn in the middle of the night and had no connection to the victim. Lloyd, supra at 869-70.

Viewing the evidence in a light most favorable to the Commonwealth, the evidence was sufficient to allow the jury to conclude that Leonard unlawfully possessed the items. Pitner, supra. The fact finder could have determined, beyond a reasonable doubt, that Leonard unlawfully possessed those items where the record shows Leonard was left unsupervised in the Travis house, the items were taken from an area Leonard was specifically prohibited from accessing, Leonard did not have permission to possess the items, and Leonard was found in possession of the items later that same day. Accordingly, this claim is meritless.

In his third issue, Leonard contends that the Commonwealth failed to present sufficient evidence to sustain his conviction for theft by unlawful taking regarding Kessler's Geo Prizm. Specifically, Leonard contends that the Commonwealth failed to show that he exercised unlawful control over the

vehicle[12] because the eyewitness who identified Leonard driving the vehicle on the date of the accident was not credible.[13]

In Commonwealth v. Galvin, 985 A.2d 783, 791 (Pa. 2009), the Supreme Court concluded that sufficient evidence existed to sustain the defendant's conviction for theft by un-lawful taking, where the defendant drove the vehicle without the owner's permission, even when he had been given permission to drive the vehicle on previous occasions.

Here, Kessler testified that on the morning of March 19, 2018, he was camping with Leonard and his brother Davin. See N.T. Jury Trial, 3/4/19, Vol. I at 19. After Davin left early for work, Leonard and Kessler were left alone and Kessler went back to sleep. Id. When Kessler woke up, he discovered that his car keys were missing and Leonard was gone. Id. at 20. Kessler reported the vehicle stolen to the police and testified that he did not give Leonard permission to drive his vehicle. Id. at 21.

_____

[12] In his appellate brief, Leonard claims he testified at trial that he had permission to use the vehicle. Appellant's Brief, at 9. However, as we already noted, see supra at n.11, Leonard never took the stand at trial.

[13] We point out that the credibility of a witness's identification is solely the province of the fact finder and is not considered by this court when evaluating the sufficiency of the evidence. Pitner, 928 A.2d at 1108. Here, Lynn identified Leonard in court as the driver of the vehicle, which was later identified as Kessler's 1997 Geo Prizm. See N.T. Jury Trial, 3/4/19, Vol. I at 40. The jury resolved any issue of the credibility of Lynn's identification at trial. As such, the credibility of Lynn's identification is not considered when determining the sufficiency of the evidence.

Later that day, Lynn was involved in a head-on collision with a white 1997 Geo Prizm, which was the same make, model and year of Kessler's missing vehicle. Id. at 73. Lynn positively identified Leonard as the driver in court. Id. at 40. When the police impounded the vehicle after the accident, Corporal Hominsky identified the vehicle as Kessler's vehicle. Id. at 73. Additionally, at the police station, Leonard gave the police access to text messages between himself and Kessler where Leonard admitted to taking the vehicle. See N.T. Jury Trial, 3/5/19, Vol. II at 23.

Similar to the situation in Galvin, supra, the Commonwealth presented sufficient evidence to prove Leonard unlawfully took possession of the owner's vehicle. As in Galvin, where the defendant was driving a vehicle without permission, Lynn saw Leonard drive Kessler's vehicle after Kessler reported the vehicle stolen. See N.T. Jury Trial, 3/4/19, Vol. I at 40. Moreover, Kessler testified he did not give Leonard permission, and Kessler reported the vehicle as stolen. Id. at 21, 31.

There was sufficient evidence at trial for the jury to conclude that Leonard exercised unlawful control, and, thus, unlawfully possessed the 1997 Geo Prizm, where the Commonwealth presented evidence that Leonard did not have permission to drive the vehicle, Leonard got into an accident while driving the vehicle, and Leonard confessed to taking the vehicle in text messages between himself and Kessler. Therefore, this claim fails.

Judgment of sentence affirmed.

J-S68019-19
J-S68020-19
J-S68021-19

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2020