J-S07026-23

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAMMIE CAMPBELL | : | |
| | : | |
| Appellant | : | No. 578 EDA 2022 |

Appeal from the PCRA Order Entered February 15, 2022,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0013197-2008.

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J:                    **FILED JUNE 6, 2023**

Sammie Campbell appeals *pro se* from the order denying his second petition filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

The PCRA court summarized the pertinent facts and procedural history through Campbell's direct appeal as follows:

> On or about October 30, 2007, [Campbell] was arrested and was charged with *inter alia* attempted murder and conspiracy to commit murder for the September 12, 2007 shooting that occurred on Mifflin Street.  [Campbell], along with his co-conspirators Markeem Vicks and Maurice Wilkerson, were involved in two related shooting battles between rival gangs in South Philadelphia.
>
> The first of these ("the Mifflin Street shooting") occurred around 3:00 p.m. on the 400 and 500 blocks of Mifflin Street, a quiet residential block.  Later that evening, [Campbell] and his co-conspirators took part in a second gunfight that occurred on or

around the 500 block of Moore Street ("the Moore Street shooting"). The second gun battle targeted Anthony Alonzo Reid, who suffered multiple near-fatal gunshot wounds.

In 2010, [Campbell] was convicted of attempted murder and related charges in a non-jury trial[.] That conviction was vacated, and the case was remanded for a new trial, following PCRA litigation in which [Campbell] alleged that trial counsel was ineffective for failing to investigate or present Erlene Muirhead, [Campbell's] girlfriend, as an alibi witness.

In between [Campbell's] original 2010 trial and his retrial in 2015, the victim, [Reid], was killed in another shooting. Additionally, Wilkerson and Vicks pled guilty to their roles in [the Moore Street shooting] and admitted that they participated in a conspiracy together with [Campbell] to attack Reid.

In 2015, represented by new counsel, [Campbell] was re-tried before this court and a jury. At that trial, the Commonwealth presented the testimony of Wilkerson and Vicks, including their guilty pleas. [Reid's] testimony from the 2010 trial was read into the record, as Reid was unavailable to testify in person due to his death. [Campbell] called [Muirhead] as an alibi witness.

On December 15, 2015, the jury convicted [Campbell] of attempted murder, criminal conspiracy, and possession of an instrument of crime, relating to the Moore Street shooting, which targeted [Reid]. [Campbell] was acquitted of all charges relating to the Mifflin Street shooting.

[Campbell] filed a timely direct appeal raising three claims: (1) that the trial court erred in expressing skepticism toward [Vicks'] testimony; (2) that the prosecutor committed misconduct in cross-examining [Muirhead] about why she failed to come forward as an alibi witness immediately; and (3) that the trial court abused its discretion by admitting two recorded prison conversations involving [Wilkerson].

The Superior Court rejected all three of [Campbell's] claims as meritless and affirmed the judgment of sentence. ***Commonwealth v. Campbell***, 996 EDA 2016 (Pa. Super. 2017). The Pennsylvania Supreme Court denied [Campbell's] petition for allowance of appeal on August 6, 2018.

Rule 907 Notice, 1/6/22, at 1-2 (unnumbered) (formatting altered).

The PCRA court summarized the subsequent procedural history as follows:

> [Campbell] initiated PCRA proceedings on September 15, 2018. New counsel was appointed to represent him. After conducting an independent review of the record and determining that three were no meritorious issues to be raised, counsel filed a no-merit brief and petition to withdraw pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).
>
> On May 20, 2019, after reviewing the **Finley** letter, issuing notice of its intent to dismiss under Rule 907, and considering [Campbell's] *pro se* responses to both the **Finley** letter and the 907 notice, this court formally dismissed the PCRA petition. [Campbell] did not file an appeal.

Rule 907 Notice, 1/6/22, at 2 (unnumbered) (formatting altered).

On September 6, 2019, Campbell filed the PCRA petition at issue, his second. Thereafter, several *pro se* filings and changes of counsel followed. Ultimately, privately-retained counsel entered his appearance, and, on September 7, 2021, filed a "Second Amended/Supplemental PCRA Petition" on Campbell's behalf. In this amended petition, Campbell raised the following four claims: 1) that trial counsel was ineffective for failing to request a mistrial due to the prosecution's belated disclosure of evidence concerning Muirhead and Officer Nancy Morley; 2) that the trial court erred in permitting Campbell's two cases to be joined for trial; 3) that trial counsel was ineffective for failing to object to the admission of Wilkerson and Vicks' guilty pleas a trial; and 4) that the jury's verdict was "an affront to the incontrovertible physical facts doctrine." Amended Petition, 9/7/21, at 7.

On January 6, 2022, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss Campbell's petition without a hearing because the issues he raised, although arguably waived, were nonetheless without merit. The court explained:

> Despite [Campbell's] argument to the contrary, these claims are partially or entirely waived. While [Campbell's] second petition was initiated within the one-year window set forth by 42 Pa.C.S. § 9545(b)(1), and is therefore timely, it is a *second* petition. [Campbell] had the opportunity to raise all of these issues on direct appeal and/or during his first PCRA petition and he did not do so. His claims are therefore waived.
>
> In order to evade waiver, [Campbell] would have to be able to show that prior counsel was ineffective for failing to raise and/or preserve the underlying substantive claims. However, as all of [Campbell's] claims are substantively without merit, he cannot make this showing.

Rule 907 Notice, 1/6/22, at 3 (unnumbered) (formatting altered). The PCRA court then went on to provide a detailed explanation for this conclusion. *See id.* at 1-5 (unnumbered).

This timely *pro se* appeal followed. The PCRA court did not require Pa.R.A.P. compliance. Campbell raises the following issues, which we have reordered as follows:

I. Did the PCRA court abuse its discretion by denying [Campbell] relief and failing to hold a hearing for trial counsel's ineffectiveness for failing to request a cautionary instruction and/or mistrial when the Commonwealth introduced both [co-conspirator's] guilty pleas as substantive evidence against [him], violating his due process rights to a fair trial?

II. Did the PCRA court abuse its discretion when it failed to grant relief and hold a hearing for trial counsel's

- 4 -

failure to request a curative instruction and/or mistrial for the Commonwealth's discovery violation for not disclosing (trial by ambush) rebuttal impeachment (school records) evidence of alibi witness, violating [Campbell's] due process rights to a fair trial.

III. Was PCRA counsel ineffective for not raising trial counsel's ineffectiveness for failing to preserve for direct review, and request a curative instruction and/or mistrial for the inflammatory and prejudicial admission of [co-conspirator Wilkerson's] jail calls, violating [Campbell's] due process rights to a fair trial.

IV. Was PCRA counsel ineffective for not raising trial counsel's ineffectiveness for not investigating [and/or] presenting impeachment evidence concerning Detective Edward Tolliver, violating [Campbell's] rights to a fair trial (due process).

Campbell's Brief at 7.

This Court's standard of review regarding an order dismissing a petition under the PCRA is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

In this appeal Campbell continues to claim that this is his first PCRA. Although he contends that in a previous filing he only sought to compel the Commonwealth to file private criminal complaints against certain detectives and police officers, the court treated the filing as a PCRA petition. Further, the PCRA court appointed counsel, and, in seeking to withdraw, first PCRA counsel informed the court that his review of the record revealed no issue that would warrant post-conviction relief. ***See*** PCRA Counsel Letter, 2/6/19 at 1. Nevertheless, because Campbell has cited ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021), and his claims of ineffectiveness of both PCRA counsel are raised in some fashion, we will address the merits of his issues.

Each of Campbell's issues involve a layered claim of ineffectiveness. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her

action or inaction; and (3) counsel's act or omission prejudiced the petitioner. *Id.* at 533.

In making a layered claim of ineffectiveness, a PCRA petitioner "must properly argue each prong of the three-prong ineffectiveness test for each separate attorney." *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 (Pa. Super. 2012). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010). "If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Id.*

In his first issue, Campbell asserts that the PCRA court erred and/or abused its discretion when it rejected his claim that trial counsel was ineffective for failing to request a mistrial and/or cautionary instruction after his co-conspirators guilty pleas were introduced into evidence. According to Campbell, contrary to his alibi, these guilty pleas placed him at the scene and were used as substantive evidence against him. Campbell's Brief at 23.

The PCRA court found no merit to this claim. The court first placed Campbell's claim in context:

> Prior to [Campbell's] trial, both Wilkerson and Vicks pled guilty to criminal conspiracy and related charges stemming from the Moore Street shooting. During both plea colloquies, the prosecutor read a statement of facts that indicated that [Campbell] was present at the Moore Street shooting, and both

Wilkerson and Vicks agreed with that statement of facts. Neither man, however, made any independent confession or statement implicating [Campbell] as part of their guilty plea colloquies. At [Campbell's] trial, both Vicks and Wilkerson were called as witnesses, and their guilty pleas were read into evidence. However, while both men acknowledged their own guilt, they also both testified that [Campbell] was not present. Vicks said that "Me and Wilkerson were there that night and we did some shooting. [Campbell] was nowhere in sight. He wasn't there; that's the truth." Wilkerson testified that he and Vicks discussed shooting [Reid], armed themselves after that discussion, and shot at Reid together, but that "[Campbell] wasn't there at all. At all."

PCRA Court Opinion, 5/19/22, at 14 (citations omitted).

Next, the court explained why the guilty pleas were properly admitted and why there was no basis for trial counsel to object:

Because both Vicks and Wilkerson testified that [Campbell] was not present at the Moore Street shooting, but had previously stipulated to his presence under oath during their guilty pleas, their pleas were admissible as prior inconsistent statements under Pa.R.E. 803.1(1)(A) (providing that a prior statement by a declarant-witness is admissible where it is inconsistent with that declarant-witness's trial testimony, and the prior statement was given under oath subject to the penalty of perjury). There was, accordingly, no basis for trial counsel to object to the admission of those statements, because they were clearly admissible under Pa.R.E. 803.1(1)(A)

Additionally, because evidence that Wilkerson and Vicks pled guilty to the Moore Street shooting was essential to the defense theory that *they alone* were responsible for Reid's shooting, and that [Campbell] had not be involved or even present on the scene, there was a reasonable strategic basis for trial counsel to refrain from objecting to the admission of those pleas. The defense argument relied on Vicks and Wilkerson taking responsibility for the crime, and therefore absolving [Campbell] of any involvement. [Campbell] cannot show that trial counsel acted unreasonably by failing to object to the admission of Vicks['] and Wilkerson['s] pleas. There was a clear strategic reason for the defense to want the jury to hear about the guilty pleas, and the pleas were plainly admissible under the rules of evidence. Absent

their pleas, the defense theory of the case would have lost much of its persuasive force. As previously stated, [Campbell] cannot establish that he was prejudiced, and counsel cannot be found ineffective for failing to make a frivolous objection.

PCRA Court Opinion, 5/19/22, at 14-15 (footnote omitted; citation corrected).

Moreover, as to Campbell's argument regarding the necessity of a curative instruction or motion for mistrial, the PCRA court explained why Campbell's reliance on our Supreme Court's decision in **Commonwealth v. Boyer**, 891 A.2d 1265 (Pa. 2006), this Court's decision in **Commonwealth v. Boyer**, 856 A.2d 149 (Pa. Super. 2004), and **Commonwealth v. Geho**, 302 A.2d 463 (Pa. Super. 1973) was misplaced:

[Campbell] argues that [the above cases] concluded that, where one or more of several charged defendants plead guilty, it is incumbent upon the trial judge to give adequate and clear cautionary instructions to the jury to avoid "guilt by association" as to the remaining defendant. Therefore, according to [Campbell], a new trial is warranted since no such instruction was given, and no objection as made by trial counsel. This argument also fails.

Here, [Campbell] relies on [**Geho**, **supra**,] in support of his claim of counsel's ineffectiveness. However, the primary concern [in] **Geho** is not present in [Campbell's] case. **Geho** involved a scenario in which three defendants were being jointly tried before a jury. Midway through the trial, two of the three co-defendants changed their pleas to "guilty" in the presence of the jury. The trial then proceeded solely against Geho. The trial court advised the jury that they were not to be concerned with, or influenced by, the two co-defendants' guilty pleas, but to consider Geho's guilt strictly based on the trial evidence.

In **Geho**, the co-defendants' guilty pleas were unaccompanied by any substantive evidence. The sole concern was that the jury would interpret co[-]defendant's guilty pleas, *in and of themselves*, as proof of Geho's guilt. Here, by contrast, Wilkerson and Vicks were <u>not</u> [Campbell's] co-defendants before this jury. Wilkerson and Vicks' guilty pleas were introduced not

- 9 -

simply to show that they had pled guilty, but because their prior inconsistent statements were admissible as substantive evidence. *See Commonwealth v. Boyer*, 856 A.2d 149, 155 (Pa. Super. 2004) (introduction of co-defendant's guilty plea "was appropriate because it was used to introduce [other admissible] evidence"). Furthermore, as previously discussed, evidence concerning Wilkerson and Vicks' guilty pleas was crucial to the defense theory of the case.

While evidence of a co-defendant's guilty plea might ordinarily be viewed with caution, due to the risk that the jury might improperly impute the co-defendant's guilt to the defendant on trial, in *this* case, evidence of the other two co[-]defendants guilty pleas was the bedrock of the defense argument. Thus, while a cautionary instruction might have been preferable out of an abundance of caution, its absence cannot have prejudiced [Campbell]. His entire defense hinged on the fact that two of his co-defendants had pled guilty to the Moore Street shooting and, after acknowledging their own guilt, had testified that [Campbell] was not there. Under these circumstances, there was little risk that the jury would improperly attribute the co-defendants' guilt to [Campbell].

PCRA Court Opinion, 5/19/22, at 15-17 (citation and some emphasis omitted).

Finally, the PCRA court concluded Campbell was also not prejudiced because, if any error occurred in failing to give a cautionary instruction, the error was harmless in light of the overwhelming evidence of Campbell's guilt:

[A]ny error in the absence of a cautionary instruction was harmless because there was considerable other evidence of [Campbell's] guilt. Before his death, [Reid] gave a police statement in which he identified [Campbell] by name as one of the three men who shot him on the night of September 12, 2007. He also identified [Campbell's] photograph as being that of one of the men who shot him and explained the motive of the crime to police. Gihad Topping, Reid's friend, also witnessed the shooting and identified [Campbell], by both name and picture, to police as one of the perpetrators. Topping told police that [Campbell] was "from 7th Street," that they had had prior violent altercations, and that he had known [Campbell] "for about three years."

This was a case in which [Campbell] was identified by multiple eyewitnesses, including the victim, as one of the shooters. The witnesses knew [Campbell] by name, and their accounts were consistent across multiple details, such as the make and color of Wilkerson's burgundy Chevy Impala, [Reid] having been told to "take his fucking hands out of his pockets" before the shooting, and the fact that Wilkerson drove away after this interaction, then returned in a different vehicle with his co-conspirators to shoot at Reid. Any error concerning the lack of a cautionary instruction was therefore harmless. **See** **Commonwealth v. Boyer**, 856 A.2d at 155 (although it was error to admit a co-defendant's guilty plea without a cautionary instruction, that error was harmless, where there was a proper basis for admitting the plea and the other evidence of guilt was overwhelming). Under the totality of the circumstances, it is apparent that the lack of a cautionary instruction regarding the jury's consideration of the co-conspirators' guilty pleas was not prejudicial. Because [Campbell] could not have been prejudiced by trial counsel's inaction, this argument fails.

PCRA Court Opinion, 5/19/22, at 17-18 (citations omitted).

Our review of the record supports the PCRA court's thorough discussion of why Campbell's first issue does not warrant post-conviction relief. The defense theory at trial clearly was to use Wilkerson and Vicks' testimony to Campbell's advantage. Indeed, as noted by the Commonwealth and not disputed by Campbell, trial counsel informed the court that he had subpoenaed these two men and intended to present them as defense witnesses had the Commonwealth not called them first. **See** Commonwealth's Brief at 11 n.6 (citing N.T., 12/9/15, at 272). Further, while Campbell claims that his name was not "redacted" from the factual basis given for the guilty pleas, such redaction is only required to protect defendants from out-of-court statements made by a non-testifying codefendant at a joint trial. **See**,

- 11 -

*generally*, *Commonwealth v. Brown*, 925 A.2d 147 (Pa. 2007).  Such is not the case here, as both Wilkerson and Vicks had previously pled guilty and were subject to cross-examination by trial counsel.

Moreover, contrary to Campbell's claim, the guilty pleas were properly admitted as substantive evidence of his participation in the conspiracy to shoot Reid.  *See Commonwealth v. Pitner*, 928 A.2d 1104, 1109 (Pa. Super. 2007) (holding that a co-defendant's prior statements relevant to his own guilty plea were admissible as substantive evidence because they were inconsistent with co-defendant's trial testimony and he was subject to cross-examination).

Finally, our review of the record supports the PCRA court's conclusion that any error in failing to give a cautionary instruction was harmless, given the overwhelming evidence of Campbell's guilt.  Thus, Campbell's first issue fails.

In his second issue, Campbell asserts that the PCRA court erred by dismissing without a hearing his claim that trial counsel should have objected and/or asked for a cautionary instruction or mistrial based upon the Commonwealth's discovery violation with regard to impeachment evidence involving Muirhead, his alibi witness.  According to Campbell, this late disclosure essentially caused a "trial by ambush," which prejudiced him.

The PCRA court found no merit to this claim.  Once again, the court first placed the claim in context:

At trial, [Campbell] presented [Muirhead] as both an eyewitness to the Mifflin Street shooting and an alibi witness to the Moore Street shooting. Muirhead testified that she, [Campbell], and a fiend of theirs were on the 400 block of Mifflin Street when their car broke down and they were attacked by an unknown shooter. Although her testimony placed [Campbell] as present on the scene at that shooting, Muirhead said that he was not armed and never fired any bullets of his own. She also testified that [Campbell] could not have been present at the Moore Street shooting, because he was with her at a friend's house in Sharon Hill, Pennsylvania, watching movies and having sex all night. As part of her testimony, Muirhead testified that on September 12, 2007, she was enrolled in the 10th grade at Furness High School. After witnessing the shooting on Mifflin Street, she had an altercation with a group of girls who attacked her. According to Muirhead she "got kicked out of school [the following day] for the incident. They said I was an endangerment to the school because of the incident." A week later, she said, she transferred to Overbrook High School.

On rebuttal, the prosecution called a school official to testify that Muirhead's school record did not reflect any disciplinary action, that she was never suspended or expelled, and that she did not miss any required attendance days in the month of September. According to school records, Muirhead did not transfer to Overbrook High School until October 24, 2007.

PCRA Court Opinion, 5/19/22, at 9-10 (paragraph break added; citations omitted).

The PCRA court then rejected Campbell's claim that he was ambushed at trial:

Despite his argument to the contrary, nothing in the transcript suggests that trial counsel was ambushed by either the school official's testimony or the documents supporting that testimony. [Campbell] has offered no citations to the record or other evidence to support his contention that the evidence was "withheld until after the trial began," or that trial counsel was surprised by the late disclosure. To the contrary, the record shows that the prosecution had spoken with trial counsel about the rebuttal witness and had provided the supporting documents in

advance, and that trial counsel was able to cross-examine the witness extensively about gaps in those records. Thus, not only does the record fail to support [Campbell's] argument, but it shows that trial counsel was able to effectively cross-examine the witness, and that any delay that may have existed in the prosecution's disclosure of that information (although not actually established that there *was* any delay) did not prejudice the defense.

PCRA Court Opinion, 5/19/22, at 10-11 (citations omitted).

Our review supports the PCRA court's conclusion that Campbell's claim of late disclosure had no support in the record. On the contrary, Campbell does not dispute the Commonwealth's contention that it informed the trial court that it had given trial counsel documents relevant to the rebuttal of Muirhead's trial testimony, and trial counsel "did not suggest that he had not seen them before, let alone that he was unfamiliar with their substance." Commonwealth's Brief at 19 (citing N.T., 12/14/15, at 75-79). Instead, Campbell relies upon a question he asked counsel about a "pile of papers" that appeared on the defense table to support his claim that the Commonwealth had not given trial counsel the discovery until that very moment. **See** Campbell's Brief at 53. Campbell's claim is not persuasive given the PCRA court's conclusion that trial counsel effectively cross-examined the witness. Thus, Campbell's second issue fails.

In his third issue, Campbell asserts that PCRA counsel was ineffective for failing to challenge prior counsel's failure to preserve for direct review, the claim that trial counsel should have requested a curative instruction and/or

mistrial after the Commonwealth introduced into evidence two prison phone calls allegedly made by Wilkerson.

On direct appeal, Campbell claimed that the trial court abused its discretion by admitting into evidence portions of two phone calls in which Wilkerson and others discussed efforts to silence or pressure witnesses. In the first recording, Wilkerson and his mother discussed his mother's confronting Reid and/or Topping at the courthouse and asking, "did you come here to snitch?" Commonwealth's Brief at 15 (citing N.T., 12/9/15, at 258). In the second recording Wilkerson and an unidentified person discussed Wilkerson's desire to "bury the rat" and "get off" as a result. *Id.* (citing N.T., 12/9/15, at 262).

Campbell argued on appeal that the second recording was not authenticated because Wilkerson denied recognizing his voice, and that both recordings were irrelevant and unduly prejudicial because they did not mention Campbell. Although this Court rejected Campbell's claim regarding authentication, we concluded that the claim regarding the relevancy and prejudicial nature of the recorded evidence was waived because Campbell failed to "move for a mistrial or request a curative instruction or any other relief based on the prejudicial nature of the recorded evidence[.]" ***Commonwealth v. Campbell***, 179 A.3d 600 (Pa. Super. 2017), non-precedential decision at 25.

Our standard of review regarding the admission of evidence is well settled: "It is well settled that the admissibility of evidence is a matter addressed to the sound discretion of the trial court and may be reversed only upon a showing that the court abused that discretion." **Commonwealth v. Wynn**, 850 A.2d 730, 733 (Pa. Super. 2004) (citations omitted). As our Supreme Court has summarized:

> Appellate courts typically examine a trial court's decision concerning the admissibility of evidence for abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility. **See** Pa.R.E. 401; Pa.R.E. 402[.]

**Commonwealth v. Dillon**, 925 A.2d 131, 136-37 (Pa. 2007).

The Commonwealth contends that both recordings were properly admissible even though neither call mentioned Campbell. As to the first call, the Commonwealth argues that attempts by Wilkerson's mother and others to pressure and/or intimidate Reid and Topping was admissible to explain why, contrary to their pretrial statements, neither Reid nor Topping identified any of the perpetrators of the shooting. Further, as to both calls, the Commonwealth contends they demonstrated Wilkerson's "bias against the Commonwealth and its witnesses, and therefore that his trial testimony

- 16 -

purporting to exculpate [Campbell] was less credible than his statements during his guilty plea colloquy." Commonwealth's Brief at 17.

We agree that these phone calls were admissible. *See*, *e.g.*, *Commonwealth v. Thomas*, 194 A.3d 159, 164 (Pa. Super. 2018) (acknowledging courts have "permitted the Commonwealth to engage in a line of questioning designed to reveal that a witness changed his testimony fear if the consequences of testifying truthfully"); *Commonwealth v. Collins*, 702 A.2d 540, 544 (Pa. 1997) (holding the evidence of efforts to influence a witness are admissible to help explain why the witness changed his or her version of the pertinent facts); Pa.R.E. 607(a) (providing that the "credibility of any witness may be attacked by any party, including the party calling the witness"). Moreover, given the overwhelming evidence of guilt, *see supra*, Campbell cannot establish that evidence of these phone calls prejudiced him. Thus, Campbell's third issue warrants no post-conviction relief.

By order entered October 4, 2022, this Court granted Campbell's application to correct brief and strike from the record the fourth issue in his brief. In this issue he asserted that second PCRA counsel rendered ineffective assistance for declining to pursue a claim of trial counsel's ineffectiveness for not impeaching Detective Tolliver with evidence allegedly showing that in 2007, the detective allegedly committed misconduct in Campbell's unrelated case in which he pled guilty to third-degree murder.

On December 8, 2022, Campbell filed with this Court an application for remand in which he recasts his claim regarding Detective Tolliver as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), due to the Commonwealth's suppressing information about Detective Tolliver in the unrelated case. According to Campbell, even though he pled guilty, evidence of Detective Tolliver's supposed dishonesty and bias toward him in that case would have been important impeachment evidence in this case.

Campbell has failed to establish any basis for remand. It appears that Campbell knew of the alleged misconduct as early as 2015 and, therefore could have raised it in his first PCRA petition. More fundamentally, Campbell provides no evidence to support his claim that the detective invented a non-existence witness in his other case. Thus, we deny Campbell's motion for remand.

In sum, because the PCRA court correctly rejected Campbell's layered claims of ineffectiveness and a evidentiary hearing was not necessary, we affirm the PCRA court's order denying him post-conviction relief.

Motion for remand denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2023