**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jeffrey E. HABAY, Appellant.**

Superior Court of Pennsylvania.

Submitted July 2, 2007.

Filed Oct. 10, 2007.

Kenneth A. Snarey, Pittsburgh, for appellant.

Anthony J. Krastek, Jr., Asst. Dist. Atty., for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., PANELLA and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

¶ 1 This case is a direct appeal from judgment of sentence. The issues are: (1) whether Count 2 of the criminal information (65 Pa.C.S.A. § 1103(a), conflict of interest) should have been dismissed because Count 1 (18 Pa.C.S.A. § 3926(b), theft of services) was a specific statute applicable to Appellant's conduct while Count 2 was a general statute; (2) whether there was sufficient evidence to support the verdict; (3) whether the verdict was against the weight of the evidence; (4) whether the conflict of interest statute is void for vagueness; (5) whether the conflict of interest statute is overly broad. We affirm the judgment of sentence.

* Retired Senior Judge assigned to the Superior Court.

### Facts

¶ 2 Appellant was a member of the Pennsylvania House of Representatives. The Commonwealth charged him with theft of services and conflict of interest, alleging he diverted services of employees in his legislative office for his own private benefit and/or pecuniary gain. He proceeded to a jury trial, after which he was acquitted of theft and convicted of conflict of interest. Appellant was later sentenced. He now appeals.

### General Statute v. Specific Statute

¶ 3 Appellant first contends the theft count was a specific statute applicable to the facts of his case and, as such, the Commonwealth should have been limited to a prosecution under that count while the conflict of interest count, being a general provision covering Appellant's conduct, should have been dismissed. He relies on 1 Pa.C.S.A. § 1933, which provides:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

¶ 4 Two statutes conflict when the same facts constituting one offense also constitute the other. *Commonwealth v. Parmar*, 551 Pa. 318, 710 A.2d 1083, 1086

(1998). Thus, pursuant to 1 Pa.C.S.A. § 1933, the Pennsylvania Supreme Court has precluded prosecutions under a general statute where the general statute and a specific one both cover the same criminal acts. *Commonwealth v. Karetny*, 583 Pa. 514, 880 A.2d 505, 521 (2005).[1]

¶ 5 Ultimately, the task when evaluating a claim such as Appellant's is to determine whether the Legislature has set forth a specific penal provision "addressing a distinct subset of circumstances within the general category of criminal activity." *Id.* If so, then the Legislature has created a specific statute that is to be applied rather than the more general provision.

¶ 6 The relevant portions of the theft statute read as follows:

**(b) Diversion of services.**—A person is guilty of theft if, having control over the disposition of services of others to which he is not entitled, he knowingly diverts such services to his own benefit or to the benefit of another not entitled thereto.

＊　＊　＊　＊　＊　＊

**(h) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Service."** Includes, but is not limited to, labor, professional service, transportation service, the supplying of hotel accommodations, restaurant services, entertainment, cable television service, the supplying of equipment for use and the supplying of commodities of a public utility nature such as gas, electricity, steam and water, and telephone or telecommunication service. The term "unauthorized" means that payment of full

---

1. As of February 7, 2003, 42 Pa.C.S.A. § 9303 provides that a defendant who violates multiple criminal statutes may be prosecuted under all applicable provisions without regard to the generality or specificity of the statutes, notwithstanding 1 Pa.C.S.A. § 1933. However, Appellant's conduct took place before the effective date of § 9303, and that provision is not retroactive. *Commonwealth v. Estman*, 591 Pa. 116, 915 A.2d 1191, 1195 (2007). Therefore, 1 Pa.C.S.A. § 1933 applied during the time-frame of the instant case.

compensation for service has been avoided, or has been sought to be avoided, without the consent of the supplier of the service.

18 Pa.C.S.A. § 3926(b), (h).

¶ 7 The conflict of interest statute states, in pertinent part:

(a) **Conflict of interest.**—No public official or public employee shall engage in conduct that constitutes a conflict of interest.

65 Pa.C.S.A. § 1103(a).

¶ 8 Public official and conflict of interest are defined in the following manner:

"Public official." Any person elected by the public or elected or appointed by a governmental body or an appointed official in the executive, legislative or judicial branch of this Commonwealth or any political subdivision thereof, provided that it shall not include members of advisory boards that have no authority to expend public funds other than reimbursement for personal expense or to otherwise exercise the power of the State or any political subdivision thereof.

"Conflict" or "conflict of interest." Use by a public official or public employee of the authority of his office or employment or any confidential information received through his holding public office or employment for the private pecuniary benefit of himself, a member of his immediate family or a business with which he or a member of his immediate family is associated. The term does not include an action having a de minimis economic impact or which affects to the same degree a class consisting of the general public or a subclass consisting of an industry, occupation or other group which includes the public official or public employee, a member of his immediate family or a business with which he or a

member of his immediate family is associated.

65 Pa.C.S.A. § 1102.

¶ 9 The evidence revealed that Appellant, in his elected capacity, controlled the services of the persons employed by the state in his legislative office. He wrongfully diverted those services for his own pecuniary gain. Both the theft and the conflict of interest statute prohibit such conduct. However, the conflict of interest provision is limited to public officials acting through the authority of their offices. Thus, the conflict statute is a specific penal provision addressing a distinct subset of circumstances (*i.e.*, public officials acting through the authority of their offices) within the general category of criminal activity. Consequently, Appellant was convicted under the more specific provision, not the more general one. His claim fails.

### *Sufficiency*

¶ 10 When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. *Commonwealth v. Pitner*, 928 A.2d 1104, 1108 (Pa.Super.2007). This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. *Id.* We do not weigh the evidence or make credibility determinations. *Id.* Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence. *Id.*

¶ 11 The conflict of interest statute does not contain a *mens rea* requirement. However, the culpability requirements of 18 Pa.C.S.A. § 302 apply to all crimes,

including violations of 65 Pa.C.S.A. § 1103. *See Parmar,* 710 A.2d at 1089. Under 18 Pa.C.S.A. § 302, crimes without specified mental states occur when the actor's conduct is intentional, knowing or reckless. Additionally, when the proscribed conduct necessarily involves deceitful acts and acts of fraud, criminal intent or guilty knowledge is an essential element of the offense. *Parmar,* 710 A.2d at 1090. The conflict of interest violation involves deceiving the state for personal benefit. *See id.* Accordingly, to prove that a defendant violated the conflict of interest statute, the Commonwealth must show beyond a reasonable doubt: (1) the defendant was a public official; (2) the defendant knowingly or intentionally used the authority of his or her office for private pecuniary gain; and (3) the gain was more than *de minimis.* 65 Pa.C.S.A. § 1103(a); 18 Pa.C.S.A. § 302.

¶ 12 As noted by the trial court, the evidence demonstrated that Appellant, in his official capacity as a state legislator, directed several state employees to conduct political work, such as fundraising efforts, for him. He did so at times when the employees were being paid by the taxpayers to perform work for constituents. As a result of the employees conducting the aforesaid political work, Appellant derived the benefit of a substantial number of hours of labor for which he otherwise would have needed to pay. Additionally, the employees utilized Appellant's legislative office and office equipment in the course of those political endeavors. Consequently, Appellant received the benefit of using those resources while not having to pay for them.

¶ 13 For example, trial testimony revealed that Rebecca Coleman was employed at Appellant's legislative office from June 1999 through January 2000. At Appellant's direction, she worked on two political fundraisers for him. In the course of doing so, she utilized Appellant's legislative office facilities and equipment such as the telephone.

¶ 14 She worked on the fundraisers for roughly one month each. During the first two weeks of her employment, she devoted substantially all of her work time to the first fundraiser. Thereafter, until the completion of that fundraiser in July 1999, she continued to devote the majority of her work day to the same fundraising effort.

¶ 15 Appellant placed Coleman in charge of the second fundraiser, and, for approximately one month, she dedicated approximately half her working time to that undertaking.

¶ 16 Margery Dillenburg, testified that, while being paid as a legislative intern in 1999, she worked two to three days on fundraising efforts for Appellant.

¶ 17 Grant Stapleton, while an employee of Appellant's legislative office, spent some twenty percent of his paid time on Appellant's political concerns. Stapleton made phone calls, placed political signs and stuffed envelopes. He also met, during work hours, with an attorney hired by Appellant to challenge the nominating petition of Appellant's political challenger. These meetings lasted perhaps five hours. Appellant was present for some of that meeting time.

¶ 18 The foregoing evidence was sufficient to allow the factfinder reasonably to find that Appellant, while a public official, knowingly and intentionally used the authority of his office to derive pecuniary gain in more than a *de minimis* fashion. Accordingly, Appellant's insufficiency claim has no merit.

### *Weight of the Evidence*

¶ 19 On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of

the evidence. *Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa.Super.2007). Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. *Id.* When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. *Id.* The factfinder was free to believe all, some or none of the evidence. *Id.* Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice. *Id.*

¶ 20 We are satisfied the trial court reviewed the evidence in this case and reasonably determined that, in light of that evidence, there was nothing shocking to the conscience about the guilty verdict. We perceive no abuse of discretion in this ruling. Thus, Appellant's weight claim cannot succeed.

### *Vagueness*

■ ¶ 21 This Court discussed the principles of vagueness in *Commonwealth v. Thur*, 906 A.2d 552 (Pa.Super.2006), as follows:

Due process demands that a statute not be vague. *Commonwealth v. Mayfield*, 574 Pa. 460, 832 A.2d 418, 422 (2003); *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996). A statute is vague if it fails to give people of ordinary intelligence fair notice as to what conduct is forbidden, or if they cannot gauge their future, contemplated conduct, or if it encourages arbitrary or discriminatory enforcement. *Commonwealth v. McCoy*, 895 A.2d 18, 30 (Pa.Super.2006). A vague law is one whose terms necessarily require people to guess at its meaning. *Mayfield*, 832 A.2d at 422. If a law is deficient—vague—in any of these ways, then it violates due process and is constitutionally void. *Id.*

By contrast, to be valid, a penal statute must set forth a crime with sufficient definiteness that an ordinary person can understand and predict what conduct is prohibited. *McCoy*, 895 A.2d at 30. The law must provide reasonable standards which people can use to gauge the legality of their contemplated, future behavior. *Mayfield*, 832 A.2d at 422; *Barud*, 681 A.2d at 165; *Commonwealth v. Mikulan*, [504 Pa. 244,] 470 A.2d at 1343 (Pa.1983) (plurality); *McCoy*, 895 A.2d at 30.

At the same time, however, the void for vagueness doctrine does not mean that statutes must detail criminal conduct with utter precision. "Condemned to the use of words, we can never expect mathematical certainty from our language." *Mikulan*, 470 A.2d at 1343 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110–12, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). Indeed, due process and the void for vagueness doctrine are not intended to elevate the "practical difficulties" of drafting legislation into a "constitutional dilemma." *Id.* (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)). Rather, these doctrines are rooted in a "rough idea of fairness." *Id.* As such, statutes may be general enough to embrace a range of human conduct as long as they speak fair warning about what behavior is unlawful. *Id.* Such statutes do not run afoul of due process of law. *Id.*

\* \* \* \* \* \*

Finally, when evaluating challenges to a statute-whether those challenges are based on vagueness … or any other considerations-we must also keep in mind that there is a strong presumption that legislation is constitutional. *Pennsylvanians Against Gambling Expan-*

*sion Fund, Inc., et al. v. Commonwealth of Pennsylvania,* 583 Pa. 275, 877 A.2d 383, 393 (2005). A party challenging legislation bears a heavy burden to prove otherwise. *Id.* Accordingly, this Court will strike the statute in question only if Appellant convinces us that it clearly, palpably and plainly violates the federal or state constitutions. *McCoy,* 895 A.2d at 30.

*Thur,* 906 A.2d at 560, 561.

■■■ ¶ 22 In addition to the foregoing principles, we note that vagueness challenges may be of two types. First, a challenge of facial vagueness asserts that the statute in question is vague when measured against any conduct which the statute arguably embraces. *Commonwealth v. Nesbit,* 394 Pa.Super. 287, 575 A.2d 633, 635 (1990). Second, a claim that a statute is vague as applied contends the law is vague with regard to the particular conduct of the individual challenging the statute. *Id.*

■■■ ¶ 23 For a court to entertain challenges of facial vagueness, the claims must involve First Amendment issues. *Mayfield,* 832 A.2d at 422. When a case does not implicate First Amendment matters, vagueness challenges are to be evaluated in light of the facts at hand—that is, the statute is to be reviewed as applied to the defendant's particular conduct. *Id.*

¶ 24 Appellant contends the conflict of interest statute, discussed *supra,* is vague both facially and as applied to him. He claims the vagueness arises because the statute does not define the phrase "Use ... of the authority of his office or employment" or the phrase "for the private pecuniary benefit of himself[.]"

¶ 25 Appellant does not develop an argument demonstrating that his claim is a First Amendment issue. As such, we need only determine whether the statute is vague as applied to him. For the reasons that follow, we find the statute is not vague under the facts of this case. In any event, as our discussion will also show, even if Appellant's claims did implicate the First Amendment, it is patently clear that the statute at hand is not vague on its face.

¶ 26 The phrases challenged by Appellant use commonly understood words in readily comprehensible ways. There is nothing unclear about the concept of using the authority of an office to obtain private pecuniary benefit. The statute prohibits people who hold public offices from exercising the power of those offices in order to secure financially related personal gain.

¶ 27 Appellant had fair notice and could easily predict that, in his capacity as an elected representative, he was not allowed to direct state-paid employees under his authority to conduct campaign and/or fundraising-related work, during state-paid time, for his personal benefit. Through his actions, Appellant secured a private monetary advantage for himself because, by having state employees work for him on his campaign and/or fundraising tasks while they were being paid by the state, he obtained the benefit of free campaign work funded by the taxpayers. In this same vein, Appellant, by virtue of using state employees, did not have to spend his own money to pay workers involved in such matters. The words of the statute surely allowed Appellant to understand that such conduct was prohibited by law. He could have easily gauged his contemplated actions and predicted they were unlawful.

¶ 28 Given the straightforward language of the statute at hand, we find it sets forth the crime of conflict of interest with sufficient definiteness that Appellant, and indeed any ordinary person, could understand and predict what conduct is prohibited. It speaks fair warning of the proscribed conduct. Moreover, we see

nothing in the statute that would promote arbitrary or discriminatory enforcement. As Appellant has failed to convince us that the statute violates the federal or state constitution, his vagueness claims fail.

### Overbreadth

¶ 29 Strictly, unconstitutional overbreadth relates only to First Amendment matters of free speech. *Commonwealth v. Duda*, 592 Pa. 164, 923 A.2d 1138, 1150 (2007). However, the general notion of overbreadth is sometimes applied in non-speech cases where, for example, the question is whether the contested statute sweeps so widely as to punish constitutionally protected, as well as unprotected, activities. *Id.; see Thur*, 906 A.2d at 560, 561.

¶ 30 Appellant complains that the conflict of interest statute is overly broad. He contends, for example, that the statute would proscribe legal conduct such as tending to constituents' needs if that conduct somehow resulted in gaining future public office, presumably through re-election. Appellant's argument is simply unpersuasive. Nothing in the statute, as written or as applied in this case, reaches protected behavior. To the contrary, the statute targets the unlawful behavior by public officials of using the authority of their public offices for their own private, pecuniary benefit. This claim lacks merit.

¶ 31 For all the foregoing reasons, we affirm the judgment of sentence.

¶ 32 Judgment of sentence affirmed.