J-S26010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M. W. | IN THE SUPERIOR COURT |
| Appellee | OF PENNSYLVANIA |
| v. | |
| AARON CHAMBERS | |
| Appellant | No. 226 MDA 2021 |

Appeal from the Judgment of Sentence Entered January 13, 2021
In the Court of Common Pleas of Dauphin County
Criminal Division at No.: 2020 CV 10202 AB

BEFORE:  STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED: NOVEMBER 2, 2021**

Appellant Aaron Chambers appeals from the January 13, 2021 judgment of sentence entered in the Court of Common Pleas of Dauphin County ("trial court"), following his non-jury conviction for indirect criminal contempt ("ICC") after he violated a protection from abuse ("PFA") order.  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  On November 9, 2020, Harrisburg Bureau Police Department charged Appellant with ICC.  The affidavit of probable cause accompanying the complaint alleged:

> On 11/09/2020 [Officer Anderson Glaude] returned a phone call that was made by [M.W.[1]].  She stated that [Appellant], contacted her on 11/08/2020 through his cell phone at 2317 hours.  [M.W.]

---

[1] We have abbreviated the victim's name to safeguard her privacy.

said that there is an active PFA against [Appellant], upon receiving this information, [Officer Glaude] confirmed that the PFA was active. [M.W.] was able to send [Officer Glaude] a screenshot of the call that [Appellant] made on 11/08/2020. Upon speaking with [M.W.], [Officer Glaude] contacted [Appellant] and informed him of the PFA violation. [Appellant] did acknowledge the PFA and that he did try to get in contact with [M.W.] on 11/08/2020 at approximately 2317 hrs. The PFA is a temporary order and was filed on 10/25/2020 and signed by Judge John F. Cherry.

Affidavit of Probable Cause, 11/9/20. On January 13, 2021, the trial court held a hearing on the ICC charge. At the hearing, the Commonwealth presented the testimony of the victim, M.W, who testified that she was in a relationship with Appellant. N.T., Hearing, 1/13/21, at 5. She stated that she had known Appellant from her "jobs." *Id.* The trial court then took judicial notice of the fact that, on October 14, 2020, M.W. had obtained a PFA order against Appellant and that the order prohibited Appellant from having any contact with M.W. *Id.* According to M.W., on November 8, 2020, Appellant called her. She explained:

Well, Sunday I had got a call from [Appellant] and it was at 11:17 p.m. And I was laying down in my bed in my apartment. And that's when I looked at my phone and it was ringing, and I didn't answer it. And it rung like four times, and then I just – I reported it the next day to the police officer.

*Id.* at 5-6. M.W. testified that Appellant called her from his cell phone number. *Id.* at 6.

On cross-examination, M.W. acknowledged that she had several phone numbers because she kept changing them at Appellant's behest via an app called TextNow. *Id.* at 7-8. She further acknowledged that Appellant did not

leave a message when he called her on November 8. Finally, M.W. acknowledged that she has had no contact with Appellant since the issuance of the PFA order. *Id.* at 7-8.

The Commonwealth next presented the testimony of Officer Glaude, who testified that, on November 9, 2020, he received a report from M.W. concerning a PFA violation. *Id.* at 10. Officer Glaude recalled that he spoke to Appellant over the phone about the situation. *Id.* According to Officer Glaude, Appellant was invited to "come into the station" so that he could share his side of the story. *Id.* Officer Glaude testified that Appellant admitted to calling M.W.'s phone, despite being aware of the PFA order. *Id.* at 10-11. Officer Glaude thereafter arrested Appellant. *Id.* at 10-11.

On cross-examination, Officer Glaude stated that Appellant did not provide any explanation for why he called M.W. on November 8. *Id.* at 12.

In response, Appellant took the stand in his own defense, admitting that he called M.W. on November 8, 2020. *Id.* at 14. Appellant explained:

> I was searching through evidence that I had to prepare for my upcoming final hearing. And I was searching through all the phone numbers that she had used to call me through her app. So I did not know which one was hers. So I was trying to make a listing for my evidence file of all the phone numbers that were called – that were – that she had called me from.

*Id.* Appellant testified that he had no intent of calling M.W. Appellant also testified that he did not know anything about the app, TextNow, and disputed M.W.'s claim that he told her to change the phone numbers. *Id.* at 14-15. At the conclusion of the hearing, the trial court found Appellant guilty of ICC and

sentenced him to pay a fine of $300.00. Appellant did not file any post-sentence motions. On February 12, 2021, he appealed to this Court. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, challenging, *inter alia*, the weight of the evidence. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Appellant presents a single issue for our review.

[I.] Did the trial court error by failing to hold more weight on specific facts presented at trial when the evidence when Appellant unintentionally and unknowingly contacted the alleged victim?

Appellant's Brief at 8 (**sic**). Differently put, Appellant essentially attacks the trial court's weight and credibility determination and invites us to accept his version of events. However, before we may address the merits of Appellant's claim, we note that he has failed to preserve his weight of the evidence claim for our review.[2]

_____

[2] As this Court has explained:

On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

*(Footnote Continued Next Page)*

Here, as stated, Appellant attacks M.W.'s credibility and the trial court's weight determination when he invites us to accept his proffered version of the events, *i.e.*, that he unintentionally and unknowingly called M.W. on November 8.[3] This issue, however, is not preserved for appellate review. Under Pa.R.Crim.P. 607, a challenge to the weight of the evidence generally must be preserved in a post-sentence motion. "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa. Super. 2004), *appeal denied*, 863 A.2d 1143 (Pa. 2004). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. *Commonwealth v. Burkett*, 830 A.2d 1034 (Pa. Super. 2003). An appellant's failure to avail himself of any of the methods for presenting a

---

*Commonwealth v. Habay*, 934 A.2d 732, 736-37 (Pa. Super. 2007) (internal citations omitted), *appeal denied*, 954 A.2d 575 (Pa. 2008). "[A] trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" *Commonwealth v. Sanders*, 42 A.3d 325, 331 (Pa. Super. 2012) (quoting *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008)).

[3] In support, Appellant points out that:

the trial court failed to attribute the appropriate weight to the evidence introduced at the [ICC] hearing. Specifically, the court failed to acknowledge the extensive amount of phone numbers [M.W.] was using through a text free app on her phone. Additionally, [M.W.] testified that Appellant did not leave a message nor appear at her house that day. Further, Appellant was gathering evidence for an upcoming final hearing.

Appellant's Brief at 10 (citations omitted).

weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. *Id.* Instantly, Appellant failed to challenge the weight of the evidence at sentencing. Additionally, as mentioned, he did not file any post-sentence motions. Accordingly, his weight of the evidence claim is waived.

Even if this issue were preserved, Appellant still would not be entitled to relief. First, Appellant essentially attacks the trial court's weight and credibility determination, and invites us to accept his version of the facts. We decline the invitation. It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court—because it is the province of the factfinder to assess the credibility of the witnesses and evidence. *See Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004); *Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); *Commonwealth v. Forbes*, 867 A.2d 1268, 1273 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that for the finder of fact.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/02/2021