J-S21041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THOMAS SMITH | : | |
| | : | |
| Appellant | : | No. 1576 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 15, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005867-2017

BEFORE:    BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:             **FILED NOVEMBER 29, 2021**

Thomas Smith appeals, *nunc pro tunc*, from the judgment of sentence imposed following a jury trial in which he was convicted of third-degree murder and possessing an instrument of crime.[1] For these two offenses, the court sentenced Smith to an aggregate term of twenty-two and one-half to forty-five years of incarceration. On appeal, Smith challenges both the sufficiency and weight of the evidence utilized in support of his convictions. Furthermore, Smith contests the "flight instruction" given to the jury. After a thorough review of the record, we find no merit to Smith's assertions, and we therefore affirm.

By way of background, this entire case stems from the stabbing death

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 2502(c) and 18 Pa.C.S.A. § 907(a), respectively.

of an individual outside a bar in Philadelphia occurring in the still-dark early morning hours. Much of the testimony adduced at trial came from those present at the bar on the night of the stabbing.

One observer noted that the decedent, who was "a little intoxicated and … saying … random things," N.T., 9/10/19, at 80, had some sort of conversation with Smith and a female Smith was interacting with at the time, but that, based on what the decedent was saying, Smith then moved to another part of the bar with that female. Eventually, the decedent yelled across the bar to Smith: "[i]s that your bitch?" *Id*., at 81-82. Upon hearing this question, Smith approached the decedent and asked whether he knew either Smith or the female. Thereafter, the decedent punched Smith, which prompted Smith to start punching, too. Patrons broke up the fight, and the two were separated to opposite sides of the bar.

Shortly thereafter, the decedent yelled: "I'm from South Philly," *id*., at 86, in addition to other, taunting messages directed toward Smith. In response, Smith ran towards the decedent and, with Smith striking first, another fistfight broke out. Patrons eventually broke up this fight as well. After this second fight, Smith was observed to have left the bar. Some time later, the decedent, too, exited the facility.

The same observer, then outside the bar, witnessed a third fight between Smith and the decedent. Smith was seen punching the decedent in the face. The decedent fell to the ground, and Smith continued to punch the decedent in the face repeatedly, but by this point, the decedent was not

swinging back. After someone yelled that the police were coming to the scene, Smith spit blood in the decedent's face and ran away. However, the person who witnessed this third fight never saw Smith with a knife in his hand, nor did he see Smith throw anything while he was in the process of running away. Immediately after the fight, according to this witness, the decedent was still conscious, questioning where Smith had gone.

The decedent's friend presented a slightly different story as to how the events transpired. The friend indicated that Smith was the one who originally approached the decedent, but, from the friend's recollection, he was unable to recall who threw the first punch in the first fight. The friend also witnessed the second fight between Smith and the decedent after, in his words, Smith rushed the decedent. Following this second fight, the friend and two other females[2] proceeded to gather up their belongings to leave, but by that point, the decedent, who was noted as responsive and relatively uninjured at the time, had already left the bar. Upon exiting the building, the friend observed the decedent lying on the ground. The friend recalled that "[h]is eyes were wide open and looked like a deer in the headlights, just a blank stare." N.T., 9/11/17, at 19. The decedent was unable to speak, and during his testimony, the friend expressly refuted that the decedent said anything to the effect of having been spat on in his face. Believing that the decedent was merely knocked out or simply had too many beers, the friend placed the decedent

---

[2] The decedent originally entered the bar with this friend and two other females.

into the back seat of the decedent's car, which was then driven to decedent's residence. The decedent was put in the vehicle despite there being a police officer standing across the street from the bar at that time. At that point, the friend did not see any observable injuries on decedent's body, having had the opportunity to get a full view of the decedent's chest during his placement of decedent in the car. However, upon arrival back at the decedent's residence, his pulse could not be found, and he was not breathing. The friend then called 911.

Upon the police's arrival, decedent was found unmoving and unresponsive in the back seat of his vehicle. Sometime later, the police analyzed the vehicle and found a red bloodstain in the rear seat area. No physical evidence related to the decedent's death was found inside or outside the bar.

The decedent's autopsy indicated that he died of a homicide, which was the result of a singular stab wound. Through a post-mortem examination of his body, it was established that a segment of a knife blade was lodged into the left side of his chest. The blade fragment blocked the wound, the place at which the knife entered his body, which led to very little external bleeding. Instead, the decedent's internal organs were damaged, and the decedent suffered a large amount of internal bleeding. The blade was, within a reasonable degree of scientific certainty, determined to have only the decedent's DNA on it.

Smith's first trial resulted in a hung jury. However, at the second trial, the Commonwealth introduced the testimony of an individual with whom Smith was incarcerated to bolster its case. He testified that Smith disclosed to him what had happened on the night of the stabbing. Specifically, the inmate stated: (1) Smith had been sitting at the bar with an older female friend; (2) the decedent questioned Smith with the aforementioned "is that your bitch?" interrogatory; (3) the decedent, who was intoxicated, punched Smith in the face; (4) after the first fight was broken up, Smith, apparently knowing the owner and/or manager of the bar, checked to see whether there were cameras outside the bar; (5) after the conclusion of the second fight, Smith was handed a knife by a friend named "Bigs," who was wearing a cast at the time; and lastly, (6) Smith, upon exiting the bar, waited outside for the decedent, stuck him with a knife, and ran.

During the second trial, the Commonwealth, over objection, sought a "flight instruction" predicated on Smith's flight and concealment of his whereabouts after the stabbing. The court gave such an instruction based on, in large part, the inability of the police to apprehend Smith due to his own evasiveness until approximately two months after an arrest warrant was issued. In addition to the various people who testified, the jury was also able to view the bar's video footage, which depicted events as they happened exclusively inside of the bar.

Following sentencing, Smith filed post-sentence motions, which were denied. However, Smith never directly appealed from the denial of these

motions. Instead, his appellate rights were restored *nunc pro tunc* by way of Post Conviction Relief Act relief. *See* 42 Pa.C.S.A. §§ 9541-9546. Accordingly, having complied with the dictates of the order granting him the ability to appeal *nunc pro tunc*, this appeal is properly before us, and we proceed to evaluate the merits of his claims.

On appeal, Smith questions:

1. Whether the evidence was insufficient to sustain the verdict of guilty for third[-]degree murder and possession of an instrument of crime because the Commonwealth failed to prove beyond a reasonable doubt that [Smith] was the person who stabbed the decedent.

2. Whether the trial court abused its discretion in denying [Smith's] post-sentence motion raising a weight of the evidence claim where the Commonwealth failed to prove beyond a reasonable doubt that [Smith] was the person who stabbed the decedent.

3. Whether the trial court committed an error of law and/or an abuse of discretion in charging the jury over defense counsel's objection on [c]onsciousness of [g]uilt.

Appellant's Brief, at 6.

Smith's first contention challenges the sufficiency of the evidence. Our standard of review when evaluating such a claim is well-settled.

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

- 6 -

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

The sole element Smith challenges in relation to his crime convictions is whether the evidence was sufficient to designate him as the perpetrator, i.e., his identity. While Smith concedes that a criminal conviction may be based purely on circumstantial evidence, he also identifies that such a conviction cannot be predicated on "mere surmise or conjecture." Appellant's Brief, at 15 citing *Commonwealth v. Stores*, 436 A.2d 1108, 1112 (Pa. Super. 1983) (further citation omitted). Smith argues that, under this precept, his presence at or near the scene of a crime would be insufficient. In other words, "something more than presence … is required to justify the conclusion that someone committed or participated in a crime." *Stores*, 436 A.2d at 1112 (citation omitted).

Smith states that "[e]ven viewing the evidence in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence, the Commonwealth failed to produce sufficient evidence to establish beyond a reasonable doubt that [Smith] stabbed the decedent." Appellant's Brief, at 16. Smith primarily

relies upon what he purports the video of the bar establishes, namely that it "does not show the larger gentleman in the cast handing the individual the Commonwealth asserts is [Smith] anything." *Id*., at 16-17. Although "[Smith] is observed speaking to him with a drink in his hand[, a]t no time do either engage in a movement that could be construed as the passing of an object." *Id*., at 17. Accordingly, "[t]here is no direct evidence that [Smith] stabbed the decedent outside of the bar." *Id*.

Smith continues by referencing the witness's testimony who asserted that he saw neither a knife nor a stabbing motion performed by Smith. **See** *id*., at 18. That same witness indicated that he did not see Smith throw anything in the process of leaving the outside bar area. To Smith, it is possible that given the decedent's intoxicated condition, the decedent could have "just as easily picked a fight with someone out of the bar, culminating in that [third-party] individual stabbing the decedent and departing the scene." *Id*.

As the Commonwealth was the verdict winner at trial, we are required to view all evidence, and reasonable inferences derived therefrom, in a light most favorable to that party. With that in mind, the Commonwealth clearly met the evidentiary threshold required to demonstrate that Smith committed the crimes for which he was charged beyond a reasonable doubt.

Smith does not directly dispute the fact that he and the decedent engaged in three fights within a short period of time, with the last fight culminating in multiple blows to the decedent's face. Moreover, there is no testimony of record indicating that the decedent engaged in a fight with

anybody else on the evening of his death, and the decedent's condition upon exiting the bar appeared to be normal.

The Commonwealth's case was further supported by the testifying inmate, who largely corroborated what other witnesses had theretofore stated. However, this inmate went beyond the eyewitnesses' testimonies by further adding that Smith, prior to the decedent's death, confirmed the nonexistence of outside facing bar cameras. Furthermore, Smith conveyed to this inmate that he had been given a knife, which was the weapon utilized to kill the decedent.

We do not find it unreasonable for the jury to infer, based on the testimony provided, that Smith was the individual who stabbed the decedent. While "the Commonwealth must … establish the identity of the defendant as the perpetrator of the crimes ... [d]irect evidence of identity is, of course, not necessary and a defendant may be convicted solely on circumstantial evidence." *Commonwealth v. Smyser*, 195 A.3d 912, 915 (Pa. Super. 2018). In addition, we reiterate that the Commonwealth does not need to preclude every possibility of innocence. With that said, the inmate's testimony expressly ties Smith to the commission of the murder. Smith does not challenge whether this individual's testimony was improperly admitted, nor does he provide any legally salient basis to overlook its existence. While, arguably, the Commonwealth would have had a more difficult time demonstrating identity absent such testimony, the fact that it is of record demonstrates that there was sufficient evidence for the finder of fact to find

this specific element of both of his offenses beyond a reasonable doubt. As such, Smith is due no relief on this issue.

In his second issue, Smith asserts that his weight of the evidence claim is meritorious because "the circumstantial evidence against [him] is weak and inconclusive." Appellant's Brief, at 19. Smith claims that "[t]he Commonwealth's case is based entirely on speculation that since [Smith] is alleged to have engaged in a fistfight with the decedent inside and outside of the … [b]ar, he must have been the perpetrator of the stabbing." *Id*., at 20.

When faced with a weight of the evidence claim,

> our role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Habay*, 934 A.2d 732, 736-37 (Pa. Super. 2007) (citations omitted).

In summation, Smith illuminates that no witness testified to having seen Smith stab the decedent. Conversely, Smith casts doubt on the reliability of the testifying inmate, whom he contends provided testimony that "was so inherently unreliable no reasonable jury could conclude beyond a reasonable doubt [Smith] is guilty." *Id*., at 20.

Our prerogative is not to reweigh the evidence that was presented at

trial, as that is a task wholly within the factfinder's domain. Instead, we conclude that the verdict, here, does not, by any sense of the phrase, shock one's sense of justice.

What Smith is essentially asking us to do is eliminate all testimony derived from the inmate. However, much of that inmate's testimony is corroborated by both witness and video evidence. The evidence, through an aggregation of all sources, demonstrated, *inter alia*, that multiple fights between Smith and decedent occurred, that there was a man in a cast at the bar with whom Smith interacted, and that Smith went to check whether there were external video cameras. Smith then conveyed to the informant that he went outside to wait for the decedent and then stabbed him to death.

While the one witness indicated that he did not see a stabbing, such an observation is of no moment when such a view could have been obfuscated given the lack of light in the middle of the night and ascertained through other sources, namely the inmate. As the trial court remarked: "[although] the testimony of a jailhouse informant raises certain questions in many cases, a wholesale dismissal of the testimony based solely upon his … status is unwarranted." Trial Court Opinion, 1/19/21, at 9. To rectify this dubious status, the inmate "was extensively cross-examined regarding history," ***id***, and found to be credible. We find that the trial court did not abuse its discretion in determining that the jury's verdict was reasonable and was not shocking to the point of necessitating reversal. Therefore, Smith's weight of

the evidence claim fails.

In his final issue, Smith refutes the trial court's decision to charge the jury on consciousness of guilt related to him fleeing the scene of the crime or concealing himself thereafter.

Our review of a jury charge challenge is as follows:

> our scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*McManamon v. Washko*, 906 A.2d 1259, 1271 (Pa. Super. 2006) (internal citations and quotation marks omitted). However, simply stated, "[a] jury instruction is proper if supported by the evidence of record." *Commonwealth v. Clark*, 961 A.2d 80, 92 (Pa. 2008). Of relevance here, "when a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis of a conviction in connection with other proof from which guilt may be inferred." *Id*. (citation omitted) (brackets removed).

The trial court's jury charge on the issue of concealment in conjunction with consciousness of guilt went as follows:

- 12 -

There was evidence … that tended to show that [Smith] either fled from police and/or hid from police.

That is, following the third fight with decedent outside the [bar], [Smith] left the scene after someone allegedly screamed, "The cops are here." Thereafter, [Smith] did not return to that bar which he had previously frequented, nor was he found at an address attributed to him, and he was arrested some two months after the issuance of the arrest warrant at a location not previously attributed to him.

Generally speaking, when a crime has been committed and a person thinks he is or may be accused of committing that crime, he flees or conceals himself, such flight or concealment is a circumstance tending to show the person's consciousness of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for another motive and may do so even though innocent.

Whether the evidence of flight or concealment in this case should be looked at as tending to show consciousness of guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight or concealment. You may not find the defendant guilty solely on the basis of flight or concealment.

N.T., 9/12/19, at 165-66.

Smith contends that, in the aggregate, there was no sound basis provided as to why such a charge was necessary. Smith states that there was no evidence presented to the court indicating that his sister's residence, the residence where his arrest warrant was issued, was his own. Moreover, there was no evidence provided regarding the success of a call made by Smith's sister, two months prior to his arrest, to a number apparently utilized by Smith. Furthermore, Smith asserts that there was no testimony indicating that he changed his normal pattern of living following the events in question.

- 13 -

While Smith may, to some degree, be correct as to some of the factual elements bolstering his claim as to why a charge was not necessary, his position does not take into account the totality of the circumstances at play. Smith states, without further elaboration, that one of the witnesses not seeing him at the bar, a bar where both were regulars, was "of no moment to this Court's analysis of the issue presented." Appellant's Brief, at 26. Smith then attempts to define himself running away from police after someone yelled that they were coming as being a mere indication that the fight was over instead of as a way to avoid detection. ***See id***.

However, the witness clearly established that Smith's normal pattern of living, like that witness's own, involved going to the bar at issue in this case. The witness continued to go to that same bar with an identical regularity as prior to the event in question, and Smith was not seen. ***See*** N.T., 9/10/19, at 97; ***see also*** N.T., 9/10/19, at 160 (establishing, through the bar's manager, that Smith usually attended that bar two to three times a week). Moreover, as to his running away after the fight and with the knowledge police had arrived, it is unequivocally a logical interpretation of that behavior that Smith was attempting to avoid being intercepted by the police. ***See id***., at 93.

In further support of the jury charge's reasonableness, police attempted to reach out to Smith's sister to locate Smith, but she did not know where he was and/or did not have information to give them. ***See*** N.T., 9/11/19, at 86. To serve the arrest warrant, police went to the last known address of Smith,

which was the product of "various databases" at their "disposal to find a good address," but were ultimately unsuccessful in their endeavor. ***Id***., at 80. Police also attempted to call what was, based on the best available evidence, his cellular phone, but found that it had been turned off. Finally, the place where he was ultimately arrested was a location in which he had no discernable prior relationship.

We find ***Commonwealth v. Whack*** to support the notion that the trial court in his case did not abuse its discretion in giving the jury a flight charge. 393 A.2d 417 (Pa. 1978). In ***Whack***, "no direct evidence was presented to establish appellant's actual knowledge that he was being sought by the police for [a] crime[.]" ***Id***., at 420. Instead, circumstantial proof existed, which involved that appellant abandoning his "normal pattern of living" to the point where could not be located at the places where his regular pursuits would take place. ***Id***. In addition, none of his contacts at his residence, place of employment, or direct family were helpful in tracking this individual down. ***See id***.

Police attempted to contact Smith, both telephonically and at what was established to be the best evidence of his residence, and communicated with at least one of his relatives, his sister. Neither pathway, either directly or indirectly, proved fruitful. In addition, testimony established that he deviated from his normal course of living by refraining from going back to the bar where he was determined, through multiple sources, to be a regular. On top of this,

armed with the knowledge that police were close at hand, Smith was seen running away from the decedent following the third iteration of the fighting between them. We find there was sufficient evidence of record for the trial court to conclude that Smith's fleeing and/or concealment to the point of establishing consciousness of guilt were permissible topics to charge the jury. Accordingly, Smith's third issue is without merit.

As none of Smith's claims warrant relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2021