J-A20016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SAMER SALEH HATTAR | |
| Appellant | No. 483 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 20, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No.: CP-45-SA-0000091-2021

BEFORE:  STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 9, 2022**

Appellant, Samer Saleh Hattar, *pro se* appeals from the January 20, 2022 judgment of sentence entered in the Court of Common Pleas of Monroe County ("trial court"), following his summary conviction for violating Section 3334(a) of the Vehicle Code ("Code"), 75 Pa.C.S.A. § 3334(a), relating to turning movements and required signals.  Upon review, we affirm.

The facts and procedural history of this case are undisputed.  Briefly, after a magisterial district judge ("MDJ") found Appellant guilty under Section 3334(a), Appellant filed a summary appeal to the trial court.  On October 6, 2020, the trial court conducted a *de novo* hearing at which both the Commonwealth and Appellant presented testimony.  Trooper, Richard Willhardt, a thirteen-year veteran of the Pennsylvania State Police, testified

_____

[*] Retired Senior Judge assigned to the Superior Court.

J-A20016-22

for the Commonwealth. He testified that he observed Appellant changing lanes back and forth during moderate to heavy traffic on Route 33, Hamilton Township, Monroe County, where the posted speed limit is 55 miles per hour. N.T., Trial, 1/20/20, at 4-7. Trooper Willhardt, who was in a marked cruiser six or seven vehicles ahead of Appellant's Tesla Model S, explained:

> I then observed [Appellant's] vehicle making lane changes back and forth within this heavy traffic, at times, causing the other drivers to have to slow down or apply some form of brakes to avoid and/or let [Appellant] within the lane of travel.
>
> . . . .
>
> When I observed [Appellant's] lane changes, they were abrupt, they were nonspecific, meaning they would not had [sic] created any further distance or allowed [Appellant's] vehicle to travel any faster or further down the road; and as I stated, they were unsafe and that I was observing other drivers in vehicles having to slow down or apply their brakes in the abrupt lane changes that were occurring.

*Id.* at 6-8, 12. Trooper Willhardt stated that Appellant changed lanes both "with and without" the lane change indicator lit. *Id.* at 8. Trooper Willhardt relied upon his extensive training and experience in explaining why Appellant's lane changes were hazardous. *Id.* He stated that, based on the amount of traffic on Route 33, the speed at which vehicles were traveling, and the distance between vehicles at the time of the incident, Appellant's abrupt lane changes put Appellant and other motorists at risk because of the amount of time it would have required for other drivers to react. *Id.* at 8-10.

In response, Appellant took the stand in his own defense. He essentially proffered his version of the events that seemingly contradicted Trooper Willhardt's testimony and questioned his credibility. Indeed, Appellant

- 2 -

testified that he was behind the wheel of his Tesla on October 6, 2020 on Route 33, with his wife in the passenger seat, and that the vehicle was on auto pilot. *Id.* at 17. Appellant explained:

> I'm driving on the right, on auto pilot, so I'm not even driving, I'm just holding the steering wheel. And then all of the sudden—the traffic flowing very beautifully—I see—very slow traffic. And I saw the trooper six cars ahead of me, but when I—because the traffic slowed down, the auto pilot stop the brake and the person behind me became very close to me. And I was telling my wife, this person is very close in the back, so the minute there's a chance, I'm just going to give the signal. And the Tesla always change the lane, it's auto pilot. I gave the signal. Tesla change the lane. [Because] he was driving slow, I passed him.

*Id.* at 17-18.

At the conclusion of the hearing, the trial court stated that it found Trooper Willhardt's "testimony to be credible about what his observations were, in that [Appellant was] changing lanes in an unreasonable fashion without using a proper signal." *Id.* at 23-24. The court then found Appellant guilty of violating Section 3334(a) and imposed upon him a fine of $25 plus court costs, totaling $143. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant essentially challenges the weight of the evidence underlying his conviction under Section 3334(a),[1] which provides:

---

[1] Appellant questions: (1) Trooper Willhardt's observations in light of the fact that he was six vehicles in front of him, (2) Trooper Willhardt's judgment under the circumstances, (3) Trooper Willhardt's bias toward a Tesla driver, and (4) the reasonableness of Trooper Willhardt's determination that Appellant made an unsafe lane change "when the traffic was moving nicely and the flow was not hindered." Appellant's Brief at 7.

Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S.A. § 3334(a).

Our standard of review from an appeal of a summary conviction heard *de novo* by the trial court is limited to a determination of whether the trial court committed an error of law and whether competent evidence supports the findings of fact. *Commonwealth v. Marizzaldi*, 814 A.2d 249, 251 (Pa. Super. 2002). "The adjudication of the trial court will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Parks*, 768 A.2d 1168, 1171 (Pa. Super. 2001). "An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *Id.* (citation omitted).

With respect to weight of the evidence claims, we have explained:

On this issue, our role is not to consider the underlying question of whether the verdict was against the weight of the evidence. Rather, we are to decide if the trial court palpably abused its discretion when ruling on the weight claim. When doing so, we keep in mind that the initial determination regarding the weight of the evidence was for the factfinder. The factfinder was free to believe all, some or none of the evidence. Additionally, a court must not reverse a verdict based on a weight claim unless that verdict was so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Habay*, 934 A.2d 732, 736-37 (Pa. Super. 2007) (internal citations omitted), *appeal denied*, 954 A.2d 575 (Pa. 2008). "[A]

- 4 -

trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" ***Commonwealth v. Sanders***, 42 A.3d 325, 331 (Pa. Super. 2012) (quoting ***Commonwealth v. Diggs***, 949 A.2d 873, 880 (Pa. 2008)).

Instantly, as stated, Appellant essentially attacks the trial court's weight and credibility determinations, and invites us to accept his version of events.[2] We decline the invitation. It is settled that we may not substitute our judgment for that of the factfinder—whether a jury or the trial court—because it is the province of the factfinder to assess the credibility of the witnesses and evidence. ***See Commonwealth v. DeJesus***, 860 A.2d 102, 107 (Pa. 2004); ***Commonwealth v. Johnson***, 668 A.2d 97, 101 (Pa. 1995) ("an appellate court is barred from substituting its judgment for that of the finder of fact."); ***Commonwealth v. Forbes***, 867 A.2d 1268, 1273 (Pa. Super. 2005) (stating that "[t]he weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that for the finder of fact."). As the trial court was free to believe all, part or

---

[2] A review of the record herein indicates that Appellant was not informed of his right to file post-sentence motions. As a result, we do not find the instant weight claim waived under Pa.R.Crim.P. 607, which provides that a challenge to the weight of the evidence be preserved in a post-sentence motion.

none of the Commonwealth's evidence, Appellant's claim lacks merit. Accordingly, Appellant's weight claim fails.[3]

      Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/09/2022</u>

---

[3] Insofar as the Commonwealth, in its brief, challenges the trial court's decision to permit Appellant to appeal his summary conviction *nunc pro tunc*, we decline to address this issue. Commonwealth's Brief at 7. The Commonwealth did not file a cross-appeal, and thus, we are without jurisdiction to address this claim. ***See Commonwealth v. Moser***, 476 A.2d 980, 982 (Pa. Super. 1984) (this Court lacks jurisdiction to address additional claims from an appellee where they did not file a cross-appeal).